UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE MANUEL SANTIAGO,<br><br>    Plaintiff,<br><br>v.<br><br>ACTION FOR BOSTON COMMUNITY<br>DEVELOPMENT, INC. and HENRYCE<br>JACKSON-GUMES<br><br>    Defendant. | Civil Action No. 17-cv-12249-ADB |

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Jose Manuel Santiago alleges that Action for Boston Community Development, Inc. ("ABCD")[1] and Henryce Jackson-Gumes (together "Defendants") harassed, failed to hire, and defamed him, and interfered with his potential employment relationships. Before the Court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is GRANTED.

### I. BACKGROUND

Mr. Santiago filed this lawsuit *pro se* on November 14, 2017 [ECF No. 1], and later supplemented his complaint through an April 4, 2018 letter to Judge Gorton and a more definite statement filed on July 12, 2018 [ECF Nos. 8, 21].[2] This factual summary presumes the accuracy of Plaintiff's allegations and draws all reasonable inferences in his favor.

---

[1] Action for Boston Community Development is captioned in Plaintiff's complaint as "ABCD-Boston."
[2] This case was later re-assigned to this Court as related to Santiago v. Boston Senior Home Care 17-cv-12246, another lawsuit filed by Santiago.

Mr. Santiago was previously employed as a Bilingual Care Manager / Case Manager at Boston Senior Home Care ("BSHC"), an organization that specializes in linking older adults and individuals living with disabilities with social services. [ECF Nos. 1-3, 21 ¶ 6].[3] At some point in or around 2012, concerns related to sexual harassment, race discrimination, sabotage of work, and theft emerged, and Mr. Santiago left BSHC. [ECF No. 1-3].[4] Mr. Santiago and BSHC agreed that he resigned, that BSHC would provide him a letter of recommendation, and that BSHC would not interfere with future employment opportunities. Id.

In 2015, Mr. Santiago arranged a July 27 interview with ABCD for a social work position, expecting that he would be interviewed for a Monday-Friday, 40 hour-per-week job. [ECF No. 21 ¶¶ 1, 39]. Although Mr. Santiago was enthusiastic and arrived early for his interview, it did not go as he had hoped. Id. ¶¶ 2, 5. ABCD Supervisor Henryce Jackson-Gumes interviewed Mr. Santiago and asked about his prior work experience at BSHC. [ECF No. 8 ¶ 3, No. 21 ¶¶ 6, 7]. After Mr. Santiago initially responded that he "resigned," Ms. Jackson-Gumes continued questioning Mr. Santiago about his experience at BSHC, causing him to feel that he was the victim of "NSA/gestapo"-style questioning. [ECF No. 21 ¶ 5]. Ms. Jackson-Gumes asked Mr. Santiago what his supervisor or Mr. Pina, a BSHC human resources employee, would say about him. Id. ¶¶ 13, 25. Mr. Santiago replied that his supervisor would say nothing about him, and that it would be a violation of BSHC's protocols and procedures for Mr. Pina, whom he did not know, to provide information about him beyond that he had worked there for three and a half years and then resigned. Id. ¶¶ 14, 27–29.

---

[3] Mr. Santiago also filed a lawsuit against BSHC and two individuals, which is the related case currently pending before this Court.
[4] Mr. Santiago's complaint, his letter to the Court, and his more definite statement provide limited background on these events. It is unclear exactly what allegations were made, who made them, and against whom they were made. Those details are not relevant to this motion.

During the interview, Ms. Jackson-Gumes explained that the available full-time positions had been filled, but that she had a position working weekends from 2:00 p.m. to 10:00 p.m. that she could offer Mr. Santiago. Id. ¶¶ 32, 33. Mr. Santiago replied that the weekend position had not been announced and was not the position he wanted to interview for. Id. ¶ 34. He asked why he had been invited to interview if there were not full-time vacancies. Id. Ms. Jackson-Gumes stated that she was interested in hiring Mr. Santiago because he was bilingual and the majority of ABCD's clients were Spanish speaking. Id. ¶ 36. Mr. Santiago said that he was willing to cover weekends, so long as his total hours would be 35 to 40 per-week and not interfere with his Church attendance. Id. ¶ 37. Ms. Jackson-Gumes again stated that the full-time positions had already been given to other applicants, but Mr. Santiago claims that she was untruthful because as of August 10, 2015, the full-time position for which Mr. Santiago had applied continued to be advertised. Id. ¶¶ 40, 41.

Mr. Santiago complains that instead of asking about his prior work experience and what his prior supervisors would say about him, Ms. Jackson-Gumes should have explored what he liked about social work, delved into how he has interacted with clients, or asked how he likes to unwind at the end of a workday—all questions that he would have happily answered. Id. ¶¶ 16–21.

## II. LEGAL STANDARD

To evaluate a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required, a pleading must set forth "more than

labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

The First Circuit has noted that "[t]he plausibility standard invites a two-step pavane." Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citations omitted).

The Court is "solicitous of the obstacles that *pro se* litigants face, and while such litigants are not exempt from procedural rules, [it] hold[s] *pro se* pleadings to less demanding standards

4

than those drafted by lawyers and endeavors, within reasonable limits, to guard against the loss of *pro se* claims due to technical defects." Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008); see also FDIC v. Anchor Properties, 13 F.3d 27, 31 (1st Cir. 1994). The Court is also required to generously construe arguments that a *pro se* Plaintiff makes in his or her briefing. Tyree v. Foxx, 835 F.3d 35, 46 (1st Cir. 2016), cert. denied sub nom. Tyree v. Chao, 137 S. Ct. 1242 (2017).

## II. DISCUSSION

### A. Failure-to-Hire

Mr. Santiago claims that Defendants discriminated against him during his job interview and that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. [ECF No. 1 at 3]. In light of the allegations in Mr. Santiago's filings, the Court will consider him to have asserted a claim under Title VII of the Civil Rights Act of 1964 against ABCD and Ms. Jackson-Gumes. 42 U.S.C. § 2000e *et seq*. Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C.A. § 2000e–2(a)(1). As an initial matter, because "there is no individual employee liability under Title VII," Mr. Santiago's Title VII claim against Ms. Jackson-Gumes must be dismissed. Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009).

The elements of a Title VII failure-to-hire claim are: (1) that the plaintiff is a member of a protected class; (2) that he was qualified for the position to which he aspired; (3) that he was not hired; and (4) that a person possessing similar or inferior qualifications was hired. Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010). This four-part standard is not necessarily "rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). The

5

"central focus of the inquiry [is] whether the employer is treating some people less favorably than others because of their race." Id.

Mr. Santiago does not allege a plausible failure-to-hire claim, because he does not assert that he is a member of a protected class or that a person possessing similar or inferior qualifications was hired for the position he sought. The sole paragraph of Mr. Santiago's more definite statement that references ethnicity, reads:

> I did ask to Ms. Gumes-Jackson, why I was invited for an interview; if there were no vacancy available of my interest. She stated that new offer given was base; because, I was bilingual and the majority of consumers were Spanish speaking, never offer the composition as ethnicities of the rest of the families/individuals attending that particular program.

[ECF No. 21 ¶ 36]. The Court cannot infer how that statement relates to Mr. Santiago's race or ethnicity, if at all. Similarly, there is no claim concerning who was hired to fill the full-time position beyond the claim that Ms. Jackson-Gumes falsely told Mr. Santiago that the position had already been filled. Neither the complaint nor the subsequently filed letter and more definite statement provide any indication that Mr. Santiago was as or more qualified than whomever ABCD hired.

Finally, the complaint and the supplemental filings do not allege statements or actions from which the Court can infer any sort of bias. That Defendants expressed an interest in hiring Mr. Santiago, despite his curt answers to completely appropriate job interview questions, and that he then turned them down is fatal to his Title VII claim, particularly in light of the other pleading deficiencies.

### B. Harassment

Ms. Santiago next asserts a claim for harassment, which is not a cognizable common law claim [ECF No. 1 at 4]. The Court will therefore treat this as a hostile work environment claim

under Title VII. A claim for harassment or hostile work environment requires a plaintiff to show that "(1) he is a member of a protected class; (2) he experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive." Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008). The allegations here do not state such a claim. As discussed above, Mr. Santiago does not claim that he is a member of a protected class, but even forgiving that pleading deficiency, Mr. Santiago's claim fails because he does not plausibly allege that he was the victim of any harassment, race-based or otherwise. Mr. Santiago does not claim that Defendants made a single statement related to his race or that the Court can construe as offensive. Further, Defendants appear to have treated Mr. Santiago's language abilities and presumed ability to assist their predominantly Spanish-speaking clientele as reasons to hire him rather than reasons not to hire him. Mr. Santiago appears merely to be the victim of a free-market system which allows potential employers to turn down applicants or offer them employment that differs from their preferences so long as those decisions are not based on race or another impermissible factor. Without evidence of cognizable harassment or discrimination, Mr. Santiago does not plausibly assert a violation of Title VII.

    **C.    Defamation**

"To succeed on a defamation claim under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006); see also White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass. 2004) (citing Restatement (Second) of Torts § 558 (1977)). A

statement is defamatory if it "would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community," and a statement is published if it is transmitted to "even one person other than the plaintiff." Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 553–54 (Mass. 2004).

Mr. Santiago's claim must be dismissed for two reasons. First, Mr. Santiago does not allege that Defendants made a false statement concerning him. Second, Mr. Santiago does not allege that Defendants published statements to anyone other than him. As such, there was no risk that anyone in the community would think less of Mr. Santiago due to statements made by Defendants.

### D. Interference With An Advantageous Relationship

Lastly, Mr. Santiago asserts a claim for "interference while job search with potential job opportunity." [ECF No. 1 at 4]. The Court will construe this as a claim for interference with an advantageous relationship. "Under Massachusetts law, to prevail on an interference with advantageous relations claim, a plaintiff must show 'that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.'" Whyman v. Whalen, No. 16-CV-10049-LTS, 2018 WL 3130630, at *7 (D. Mass. June 22, 2018) (quoting Blackstone v. Cashman, 860 N.E.2d 7, 12–13 (Mass. 2007)). Here, the job with ABCD is the only prospective employment opportunity identified by Mr. Santiago. He cannot assert a claim against ABCD because it is not a "third party" to that potential relationship. Even assuming, *arguendo*, that Ms. Jackson-Gumes could be considered a "third party" to that prospective employment relationship, Mr. Santiago's

interference claim against her fails because he does not allege an improper motive or means for her actions.

### III. CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED.

**SO ORDERED.**

October 31, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE